C. T. JOHNSON et als. v. J. T. GOOCH, Administrator, etc., et als.

*Construction of Will—Extinguishment of Debt—Practice—Defect of Parties.*

1. Where a wife declared in her will that if her husband should pay off and discharge all the debts contracted by him prior to his marriage with her he should take and hold all her estate absolutely and for his own sole use and benefit, the discharge by the husband, in his life-time, of his debts of that class *eo instanti* vested in him the absolute title to the estate so devised, and it became subject to his debts contracted subsequently to the marriage.

2. The purchase by a judgment creditor, at his execution sale, of property levied upon as belonging to the judgment debtor, for a sum sufficient to pay the debt, interest and costs, was a discharge and extinguishment of that particular debt, notwithstanding the property so sold was afterwards, in a suit by the owner against the creditor for damages, adjudged to be the property of the former, for, although a new cause of action thereupon arose in favor of the judgment creditors against the judgment debtor, it did not revive the judgment debt which had been satisfied.

3. Where a defect of parties appears on the face of the complaint it should be taken advantage of by demurrer; if such defect does not so appear, the defendant, in his answer, should set out the names of those who are necessary parties, to the end, in either case, that the Court, being thus informed, may decide, before the trial of the issues of fact or law, that all necessary parties are present.

4. Where in a pending suit one of the parties asks for the appointment and joinder in the suit of a trustee for the applicant in the place of a deceased trustee, the appointment so made is binding only on the party so requesting it.

CIVIL ACTION, tried before *Bynum, J.,* and a jury, at August Term, 1893, of NORTHAMPTON Superior Court. The action was originally commenced by Catherine T. Johnson, Cornelia Johnson and Lula Johnson, as plaintiffs, against J. T. Gooch, as administrator *de bonis non, c. t. a.,* of Virginia A. Johnson, as defendant. W. W. Peebles and

R. B. Peebles were afterwards made parties defendant. The said Catherine was sister to Dr. James Johnson and trustee under the will of Virginia A. Johnson. The said Cornelia and Lula were the only unmarried daughters of Dr. James Johnson at the time of the death of the said Virginia. Pending this action the said Catherine and Cornelia died intestate and without issue, and having never been married, leaving them surviving the plaintiff Lula and two sons and two married daughters of Dr. James Johnson as their heirs at law and next of kin. At the Spring Term, 1892, of said Court, by motion in the cause before his Honor Judge Brown, without motion or action by the heirs at law or personal representatives of the said Catherine and Cornelia, or either of them, the defendants objecting and excepting, J. T. Flythe was appointed and substituted as trustee in the place of Catherine T. Johnson, with power to prosecute this action, etc., and was made party plaintiff.

To this order the defendants objected and excepted.

At the August Term, 1893, of said Court, before Bynum, J., the following issues were submitted to the jury, to-wit:

" 1. Did James Johnson owe any debts contracted prior to his marriage with V. A. Johnson?

" 2. If so, did he pay off and discharge all said debts at any time prior to his death?

" 3. Were the debts under which the land was sold contracted after the said marriage of James Johnson?"

The defendants in apt time tendered this issue, to-wit:

" If said Johnson owes any such debts were they paid off or discharged prior to the commencement of this action?"

The issue was refused, and the defendants excepted.

The will of Virginia Johnson was as follows:

"*First.* I devise and bequeath my whole estate to Catherine Johnson, my sister-in-law, in trust for 'the following

purposes, namely, in trust to hold and preserve the same from all liabilities to the debts of my husband, James Johnson, which were contracted by him prior to our inter-marriage.

"*Secondly.* To hold the same subject to the foregoing provision for the use and benefit of my husband, the said James Johnson, during the term of his natural life, and at his death to dispose of and convey the same in such manner and to such persons and purposes as the said James John-son may, by his last will and testament, direct.

"*Thirdly.* In case any person or persons should take pro-ceedings to subject any portion of my estate, held in trust as aforesaid, to the debts of the said James Johnson, which were contracted prior to my marriage with him, then and in that case all interest, whether as *cestui que trust* or other-wise, of the said James Johnson in my said estate, shall instantly cease and determine; and the said Catherine Johnson shall thereafter hold the same divested and dis-charged of the aforesaid trusts and upon the following trusts, namely, in trust for her own use and for the use of such of the daughters of my said husband, James John-son, as may then never have been married, as long as they remain single; as each may marry her interest shall cease, and when all are married, then in trust for her own use, and the use of the married daughters of the said James Johnson, share and share alike. On the death of the said Catherine Johnson her interest shall cease and go over into the common fund for the benefit of the other *cestui que trust.*

"*Fourthly.* Subject to the following provisions, I declare that Catherine Johnson shall have power to sell any por-tion of my real estate and make title to the purchasers on receipt of the purchase-money, and the like as to my per-sonal estate, and shall re-invest the proceeds to be held upon the same trusts as the original estate.

"*Fifthly.* In case my husband, James Johnson, should die without having executed any last will and testament I declare that my said estate shall be held by Catherine Johnson upon the trusts declared in the third clause of this my will.

"*Sixthly.* In case the said James Johnson should fully pay off or discharge by any means all and every of the debts contracted by him prior to my marriage with him, then and in that case I declare that he shall take and receive all of my aforesaid estate free and discharged from all the trusts in the premises declared, and shall hold the same absolutely for his own sole use and benefit."

Dr. James Johnson died intestate 16th of March, 1876. V. A. Johnson and James Johnson were married August 30, 1859. Upon said issues the plaintiffs introduced Dr. A. J. Ellis as a witness, who testified that he knew Dr. James Johnson. Plaintiffs then asked witness whether Dr. James Johnson owed him anything at the time of his death, and if so, has it ever been paid. To this defendants objected under section 580 of *The Code*. Objection overruled, and defendants excepted. "For this debt I took judgment against him in 1857 or 1858."

The record of said judgment was afterwards introduced, and it showed that said judgment was rendered at the September Term, 1859, of the Court of Pleas and Quarter Sessions of Northampton.

This witness stated that said debt had never been paid; that he did not know Dr. Johnson's financial condition, and that he did not know of any other debt that he owed.

On cross-examination this witness said: "I reduced this debt to judgment, had an execution issued and levied on some cotton as the property of Dr. James Johnson, and the Sheriff sold it under said execution as the property of Dr. James Johnson, but Catherine Johnson claimed it, and after

the war brought suit against me and recovered back the value of the cotton. I think the cotton was seized and sold about March, 1859. I bought the cotton at the execution sale at a bid sufficient to pay in full the amount of my judgment and interest and costs. I got the cotton. Catherine Johnson claimed it, and after the war she sued me and got judgment against me for the value of the cotton, and I paid it. I brought no suit against Dr. Johnson, nor did I ask him for the money that Catherine recovered against me."

On the re-direct examination this witness stated: "I was present at the trial of Catherine Johnson's suit against me." Under objection by the defendants this witness was permitted to say that in that case the cotton was adjudged to be the cotton of Catherine Johnson. Plaintiffs then offered judgment of Court of Pleas and Quarter Sessions, dated September 5, 1859, in the case of A. J. Ellis, as administrator of Robert Ellis, against James Johnson for $449.19, it being the judgment under which cotton was sold, and for the only debt of James Johnson due this witness. This witness said: "This debt was a security debt. My father and J. J. Long were sureties for Dr. James Johnson to John Summerell. My father died in 1857. I qualified as his administrator at the next term of the Court after his death. Long paid the whole debt to Summerell. I paid Long my father's half of it soon after I qualified as his administrator. This judgment was taken by me against Johnson for that money and to pay it. Said cotton was sold by the Sheriff and bought by me. I never brought any suit against Dr. James Johnson for the money that Catherine Johnson recovered against me." This was all the evidence offered by plaintiffs.

The defendants then put in evidence three judgments and executions against James Johnson under which the land known as Diamond Grove was sold when the defend-

ants W. W. Peebles and R. B. Peebles became the purchasers.

The defendants asked the Court to charge that if the jury believed the evidence of Dr. Ellis they should find that the surety debt mentioned by him was discharged prior to the date of James Johnson's death; that upon the whole evidence the jury should answer "No" to the first issue and "Yes" to the others; and that upon the evidence the jury should answer "No debts" to the first issue and "Yes" to the others.

The Court refused all of said prayers, and upon the request of the plaintiffs charged the jury that if they believed the evidence of Dr. Ellis they should answer the first issue "Yes" and the second "No."

The jury answered "Yes" to the first and third issues and "No" to the second.

There was judgment for the plaintiffs, and defendants appealed.

*Mr. Thomas W. Mason*, for plaintiffs.

*Messrs. W. H. Day* and *R. B. Peebles*, for defendants (appellants).

BURWELL, J.: The fund held by the defendant Gooch, administrator, which is the subject of this controversy, is the proceeds of the sale of a tract of land that once belonged to Mrs. Virginia A. Johnson. All parties concede that it is liable for her debts. The defendants R. B. Peebles and W. W. Peebles assert title to the balance that will remain after the payment of her debts, and found their claim thereto on the fact that they hold by purchase at execution sale the estate of James Johnson in said land, and this seems to be conceded. The plaintiffs base their claim to the fund upon the allegation that the land was not the

property of James Johnson, and that under the will of Mrs. V. A. Johnson it was theirs, subject only to the payment of her debts. The defendant Gooch avers that if the fund does not belong to his co-defendants there are other persons besides the plaintiffs who have an interest in it, and that he should be protected from the possible demand of those claimants before he is required to pay over the fund.

Throughout the will of Mrs. Johnson there is, we think, the clearly expressed intent to provide that her husband shall have and enjoy all her estate, and there is effectual provision made to prevent the disturbance of that enjoyment of it by any creditor of her husband whose debt was contracted before her marriage to him. She seems to have been determined, for some reason, that no one of that class of his creditors should get satisfaction of their claims against him from any property that had belonged to her. The provisions of the first five sections of her will must be considered as controlled in their operation by the sixth and last section, which plainly declares 'that if her husband shall pay off and discharge all the debts contracted by him prior to his marriage to her, he shall take and hold all the estate "absolutely for his own sole use and benefit."

If, therefore, all the debts of James Johnson which belonged to that class were discharged in his life-time, *eo instanti* the property thus devised became his absolutely, the danger against which she was so careful to guard her estate being thus destroyed, and there being no further reason, as she seems to have thought, why he should be kept out of the absolute ownership of that property which she wished him to enjoy.

We think that the evidence of plaintiffs' witness Ellis (objection to the admission of which was withdrawn here), while it established the fact that James Johnson was, in September, 1859, a judgment debtor to him, the debt being

of the class mentioned above, also proved that that judgment was fully discharged in the following March by the levying on and selling of cotton, and the purchase of it by the judgment creditor, the witness, at a price sufficient to pay the debt, interest and cost, as stated by him. That ante-nuptial debt was thereby extinguished. *Wall* v. *Fairley*, 77 N. C., 105, and cases cited. And if it be true that thereafter he was sued by a person who asserted that the cotton so sold was her property and not the property of James Johnson, the defendant in the execution, and damages were recovered of him, that created no liability on the part of the defendant to pay again the judgment that had been discharged, but merely gave to the judgment creditor a cause of action against the judgment debtor, under section 27 of chapter 45 of the Revised Code (*The Code*, §468), for the sum so recovered of him. No such action was brought. If it had been, and had been successful, it would not have fixed James Johnson with an ante-nuptial liability.

The extinguishment of this judgment and the discharge of all his other liabilities of that class had the effect to invest him with the absolute title to the estate of his wife, and it would be unreasonable to declare that he had lost that title because a new cause of action arose against him, though it was in some degree connected with an ante-nuptial debt. We think, therefore, that his Honor erred when he instructed the jury that if they believed the evidence of Ellis they must find that the ante-nuptial debts of James Johnson had not been paid off and discharged by him in his lifetime. The only debt of that class that is in dispute, as it seems, was discharged by the sale of property alleged to belong to him. That was a discharge of it "by him."

If the defendant Gooch is advised that there is a defect of parties he should file a demurrer in which he should state what persons should be brought in, their presence

being *necessary* to a determination of the controversy. This course is prescribed if the defect appears on the face of the complaint. If it does not so appear he should in his answer set out the names of the persons who he is advised are necessary parties, and their interest in the matter in controversy, to the end that the Court, being thus informed either by his answer or demurrer, may decide, before the trial of the issues of fact or law is determined, that all *necessary* parties are present. The defendant Gooch has not in either of these ways brought up this question. He is the holder of the fund. The other parties, plaintiff and defendant, are adverse claimants of it. Since, for the reasons above stated, there must be a new trial of the action, he will have an opportunity thus to protect himself from other claimants, either of the whole fund or of parts of it, if any there be.

We deem it proper to say that the appointment of J. T. Flythe to be trustee in the place of Catherine J. Johnson, deceased, is binding only on that one of the daughters of James Johnson who is the plaintiff here and asks for his appointment. Error.